IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KOREA WITCHER JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:06CV463-MHT |
| | ) | |
| FEDERAL BUREAU OF INVESTI-GATION, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

The plaintiff, Korea Witcher Johnson ["Johnson"] has filed a civil complaint alleging that the Federal Bureau of Investigation ["FBI"] failed to investigate the kidnapping of her chidren from Georgia.  Because the complaint raised several questions about the court's exercise of jurisdiction, on 27 June 2006, the court conducted a recorded status conference with the plaintiff ["Johnson"] and counsel for the defendants.[1]  Johnson's contention in the instant lawsuit is that the FBI failed to investigate her complaint that her children had been kidnapped.

Based upon the allegations in the complaint, Johnson's representations at the status conference, the court's review of Johnson's previous case, and the applicable law, the Magistrate Judge recommends that her complaint be dismissed prior to service.  Johnson has failed to state a cause of action against the defendants; thus, the claims presented in this case

---

[1]The defendants in this case have not been served, and counsel appeared at the specific request of the court.

lack an arguable basis and are therefore due to be dismissed before service upon application

of 28 U.S.C. §1915(e)(2)(B)(i) and (ii). *Neitzke v. Williams*, 490 U.S. 319 (1989).

# I.    DISCUSSION

*A.    Previous Action*

After reviewing the plaintiff's ["Johnson"] complaint, the court preliminarily

determined that the plaintiff may have been asserting the same claim and stating the same

cause of action previously considered by this court in *Johnson v. Soc. Sec. Admin., et al.*,

Civil Action No. 2:02CV160-WHA. In that action, Johnson alleged, *inter alia*, that the

Attorney General for the State of Alabama failed to investigate the kidnapping of her

children.[2] The court adopted the Recommendation entered by the Magistrate Judge, which

rejected Johnson's claim against the Attorney General because she failed to "point to a

violation of a specific federal right (quoting *Whiting v. Traylor,* 85 F.3d 581, 583 (11th Cir.

1996)). Moreover, relying on *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), the court

determined in the previous case that the Georgia order terminating Johnson's parental rights

was "a valid order rendered by a state court of competent jurisdiction" and was therefore

immune "to attack on collateral review in federal court" (See Docs. # 34 and 38).

---

[2]In spite of the presence in the record of a certified copy of a Georgia judgment
terminating her parental rights, Johnson persisted in a claim that her children were
"kidnapped" and brought to Alabama and that the Alabama Attorney General was a co-
conspirator in that wrongful action. In the instant case, she alleges that the FBI was a co-
conspirator in the kidnapping.

Johnson appealed the court's judgment (Doc. # 39 in the previous case), and on 13 June 2003, the Eleventh Circuit Court of Appeals affirmed this court's judgment, finding, in pertinent part, as follows:

> Neither the Attorney General, nor the State of Alabama, has a federal constitutional duty to undertake an investigation in circumstances such as these. The allegations concern acts of private violence, and Georgia, not Alabama, allegedly placed the children with the kidnappers so there is no "special relationship" which might create such a duty. *See Deshaney v. Winnebago County Dept' [sic] of Soc. Servs.*, 489 U.S. 189, 197, 109 S.Ct. 998, 1004 (1989). Further, Johnson points to no federal statute, nor are we aware of any, which would require the Attorney General to investigate the alleged kidnapping. Therefore, Johnson's complaint does not state a claim against the Attorney General.

*Johnson v. Soc. Sec. Admin.,* No. 02-0160, 71 Fed. Appx. 822 (11th Cir. 2003) (Table) (Text at 1:02cv160, Doc. # 44, p. 4-5). The appellate court also ruled that the district court did not abuse its discretion in denying Johnson's second motion to amend her complaint. Similarly, this court discerns only futility in any attempt to amend the instant complaint.

### B.    *Nonmutual Collateral Estoppel*

The court has carefully compared Johnson's complaint in the instant case with his complaint in the previous case and finds that, to the extent that she alleges that the FBI's failure to investigate her complaint renders that agency a co-conspirator, the two complaints are quite substantially the same. That circumstance suggests that Johnson may be collaterally estopped from prosecuting the claim against the FBI.

3

Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Wingate v. Wainwright*, 464 F.2d 209, 212 (5th Cir. 1972) (citing *Ashe v. Swenson*, 397 U.S. 436, 443 (1970).   In her two lawsuits, however, Johnson did not name the "same parties", and ordinarily, "there is no possibility of collateral estoppel since both cases involved different defendants".  464 F.2d at 213.

However, even in instances where  - as here -  the plaintiff sues different defendants on issues arising from the same nucleus of facts, the Court of Appeals has applied the doctrine of nonmutual collateral estoppel to preclude the second or later lawsuit.

> The Supreme Court recognized this doctrine in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1970). In *Blonder-Tongue* the university association had brought the first suit and lost, and then brought the second suit against a different defendant. This second asserted defensive nonmutual collateral estoppel to prevent the university foundation from establishing the validity of the patent previously held invalid. The rationale behind this, of course, is to prevent a party from being able to relitigate an issue where that party "had a full an fair opportunity to litigate the issue in the earlier proceeding." A.J. Taft Coal Co. v. Connors, 829 F.2d 1577, 1580 (11th Cir. 1987).
>
> The Eleventh Circuit has endorsed this type of collateral estoppel when several prerequisites to the application are present. For a court to apply nonmutual collateral estoppel the issue at stake (1) must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated; and (3) the determination in the prior proceeding must have been a crucial and necessary part of the judgment in the earlier action. *Id. Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468, 1473 (11th Cir. 1986).

4

*Pierce v. Ritter*, 133 F. Supp. 2d 1344, 1347 (D. Fla. 2001)

Thus, in this circuit,

> A district court's ruling has a preclusive (collateral estoppel)
> effect on subsequent litigation only if "(1) the issue [is] identical
> in both the prior and current action; (2) the issue was actually
> litigated; (3) the determination of the issue was critical and
> necessary to the judgment in the prior action; and (4) the burden
> of persuasion in the subsequent action [is not] significantly
> heavier.

*Agripost, Inc. v. Miami-Dade County*, 195 F.3d 1225, 1230 (11th Cir. 2003) (quoting *SEC*

*v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir.1998)).

All of those elements are met in the instant case. First, the issue is "identical in both

the prior and current action". In both actions, Johnson complains, without citing any

constitutional or statutory basis, that the failure of a law enforcement agency  - the Alabama

State Attorney General or the FBI -  failed to investigate her complaint that her children had

been kidnapped.

Second, the issue of the alleged wrongfulness of the Attorney General's failure to

investigate was "actually litigated" in the previous action. Johnson was afforded an

opportunity to be heard in the prior action by filing a response to the Attorney General's

motion to dismiss her lawsuit on 23 April 2002 (See Doc. # 25 in prior action). Hence, the

second element is satisfied.

Third, "the determination of the issue [identified by Johnson] was critical and

necessary to the judgment in the prior action". Initially, this court found that in the previous

case that "[t]he crux of Johnson's claim against [the Attorney General] is her contention that

his office declined to investigate her allegations regarding the kidnapping of her children .

. .".  That is precisely Johnson's claim in the instant case against the FBI.  Next, the court

actually determined that Johnson's claim was meritless:

> Even under the liberal construction accorded *pro se* plaintiffs,
> the complaint fails to articulate facts sufficient to support any
> cause of action against Pryor for which relief can be granted.
> Neither Johnson's complaint nor her response to the dismissal
> motion -  which asserts a purported constitutional claim against
> Pryor for rejecting Johnson's request to jump headlong into an
> investigation of the kidnapping of children legally removed
> from her custody by a court of competent jurisdiction -
> substantiate material elements necessary to sustain recovery
> under any viable legal theory.  *See Whiting v. Traylor*, 85 F.3d
> 581, 583 (11th Cir. 1996) (noting that "to state a section 1983
> claim, a plaintiff must point to a violation of a *specific* federal
> right).

***Johnson v. Soc. Sec. Admin., supra***, Doc. # 34, p. 16.  That determination was "critical and

necessary" to the court's judgment in favor of the Attorney General.

Finally, the "burden of persuasion" in both cases was the same.  Johnson, as the

plaintiff, was required to invoke the court's jurisdiction properly.  Her failure to do so on

both occasions leads to the same result on both occasions.

Since all of the elements of the doctrine of nonmutual collateral estoppel are present

in this case,  the court finds that the doctrine of nonmutual collateral estoppel precludes

Johnson's relitigation of her claims, whether she intended to assert them pursuant to 42

U.S.C. §1983, the Due Process Clause of the Constitution, or some other constitutional

provision.[3] *See also Pantex Towing Corp. v. Glidewell,* 763 F.2d 1241, 1245 (11th Cir. 1985).   Moreover, inasmuch as Johnson  has essentially filed the same complaint for a second time, her claim should be dismissed as frivolous.

## II.   CONCLUSION

Johnson's representations at the status conference clearly indicate that she has failed to accord the appropriate authority to the court's findings and previous judgment, including the fact that her parental rights were terminated pursuant to a lawful order in Georgia, her children were not kidnapped, and that no law enforcement agency engaged in a conspiracy to deprive her of her children.  The court's review of her two complaints leads ineluctably to the conclusion that they are but alternate iterations of each other, citing the same claims, articulating the same accusations, and requesting the same relief that have already consumed a substantial share of the court's scarce resources.

The court cannot ascribe the deficiencies in Johnson's complaint and her cause of action solely to her *pro se* status.  Even if that were the case, however, the Court of Appeals

---

[3]Following serial requests by the court at the status conference to identify a legal basis for her claims, Johnson was utterly unable to cite to even one.  She continued to re-iterate her "right" to relief, and seemed oblivious to the need to assert a legal basis, whether statutory or constitutional, for her claim.  Johnson appeared to believe that her own conviction of the wrongfulness of the FBI's actions or responses was sufficient to invoke the court's jurisdiction and provoke the court's action.  It is not.

explained in *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir.1998), that, although a court will show some leniency to a *pro se* plaintiff, "a court [does not have] license to serve as *de facto* counsel for a party ..., or to re-write an otherwise deficient pleading in order to sustain an action . . . ." *See also McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.")

The instant litigation is more likely due to Johnson's refusal to accept the court's judgment, and, as such, borders on abuse of process. Johnson is therefore CAUTIONED that the court may not continue to accept pleadings which re-allege claims that have already been decided. While she enjoys the same access to the courts as other citizens, that access can be more stringently regulated if her future filings demonstrate a disregard for the court's findings and judgments.

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that this cause be dismissed as frivolous within the meaning of 28 U.S.C. §1915(e)(2)(B)(i) and (ii).

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before 21 July 2006. A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of

issues covered in the Recommendation and shall bar the party from attacking on appeal

factual findings accepted or adopted by the District Court except upon grounds of plain error

or manifest injustice.  ***Nettles v. Wainwright***, 677 F.2d 404 (5th Cir. 1982).  *See **Stein v.***

***Reynolds Securities, Inc.***, 667 F.2d 33 (11th Cir. 1982).  *See also **Bonner v. City of Prichard***,

661 F.2d 1206 (11th Cir. 1981, *en banc*).

    DONE this 7th day of July, 2006.


        /s/ Vanzetta Penn McPherson
        VANZETTA PENN MCPHERSON
        UNITED STATES MAGISTRATE JUDGE